UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| ROSETTA FULLER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:15-CV-469-PRC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Rosetta Fuller on December 28, 2015, and Plaintiff's Opening Brief [DE 15], filed by Plaintiff on June 20, 2016. Plaintiff requests that the Court reverse the December 24, 2014 decision of the Administrative Law Judge denying her disability insurance benefits and remand for further proceedings. For the following reasons, the Court denies Plaintiff's request.

## PROCEDURAL BACKGROUND

On December 21, 2012, Plaintiff Rosetta Fuller filed an application for disability insurance benefits, alleging disability beginning July 11, 2012. The claim was denied initially and on reconsideration. On July 29, 2014, a hearing was held before Administrative Law Judge ("ALJ") Lorenzo Level. Participating in the hearing were Plaintiff, her attorney, an impartial vocational expert, and two impartial medical experts. The ALJ issued a written decision on December 24, 2014, concluding that Plaintiff was not disabled based on the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since July 11, 2012, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease, depression and anxiety.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except never climb ladders, ropes or scaffolds and no more than occasional crawling. Claimant is limited to frequent overhead reaching. She should avoid concentrated exposure to hazards. Claimant can understand, remember and carry out simple instructions and perform simple tasks. She is limited to frequent interaction with the public, coworkers and supervisors.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born [in 1960] and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 11, 2012, through the date of this decision.

(AR 20-32). Plaintiff then sought review before the Agency's Appeals Council, which denied her request on November 3, 2015, leaving the ALJ's decision as the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On December 28, 2015, Plaintiff filed the Complaint in this case.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir.

3

2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**DISABILITY STANDARD**

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from

4

engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [her] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

# FACTUAL BACKGROUND

## A. Medical Evidence

On March 24, 2010, Plaintiff underwent a cervical discectomy and fusion with instrumentation placement at C5-6 and C6-7 to treat cervical disc herniations that were causing cervical radiculopathy and neck pain. She eventually recovered and returned to work. She subsequently had a recurrence of symptoms, and on March 21, 2011, she saw Dwight Tyndall, M.D. who determined that she had pseudoarthrosis developing at the C5-6 level. Dr. Tyndall prescribed a bone stimulator. After five months of use, Dr. Tyndall determined that the pseudoarthrosis was persistent; he recommended surgery on the C6-7 level.

On November 9, 2011, Plaintiff presented to her treating physician, Patrick Cosgrove, D.O., at the Franciscan Hammond Clinic Speciality Center, with continued complaints of neck pain and for clearance for surgery. Under the "Physical Exam" heading of "Musculoskeletal," Dr. Cosgrove indicated "Abnormal. Decreased ROM with flexion, extension." (AR 277). Plaintiff did not follow up after that appointment. On February 21, 2012, Plaintiff presented to Thomas Bacevich, M.D., also at the Franciscan Hammond Clinic Specialty Center, for evaluation and medication refill. Dr. Bacevich noted her complaint of constant neck pain rated as a six on a scale of one to ten and that she stated her symptoms are worsening. On physical exam, Dr. Bacevich noted restricted and painful flexion, extension, left lateral flexion, right lateral flexion, and rotation to the right and left. Dr. Bacevich referred Plaintiff back to Dr. Tyndall for an orthopedic evaluation.

On April 23, 2012, Plaintiff was evaluated by Dr. Tyndall and chose the surgical option. On May 10, 2012, Plaintiff was evaluated by Dr. Cosgrove, who cleared her for surgery. Under the heading "musculoskeletal," Dr. Cosgrove wrote "abnormal." (AR 270).

On July 10, 2012, Plaintiff underwent a C6-7 posterior surgical fusion with instrumentation for the C6-7 pseudoarthrosis with neck pain. She never returned to work after the surgery. Following the surgery, she had appointments with Dr. Tyndall and physical therapy from July 23, 2012, through October 9, 2012.

On November 12, 2012, Plaintiff had a follow up visit with Dr. Tyndall who noted that while the post-surgical pain had resolved, her pre-surgical pain continued.

Dr. Smejkal performed a physical consultative examination on January 30, 2013. (AR 356). Plaintiff reported that she still had severe pain after two surgeries and was unable to do daily living activities and could not sit for long periods of time. On a review of the nervous system, Plaintiff reported dizziness, weakness, and poor balance and that she suffered from headaches. On physical examination, Dr. Smejkal indicated that Plaintiff was in no painful distress, walked in a straight posture, and appeared comfortable in the seated and supine position. As for the musculoskeletal exam, Dr. Smejkal found normal curvature of the spine with no anatomic deformities noted. He noted spinous and paraspinal tenderness in the cervical region with restricted range of motion and observed full range of motion in the lumbar and thoracic region. Straight leg raising was negative. In the upper extremities, Dr. Smejkal observed full range of motion in all upper extremities with 4/5 strength in all upper major muscle groups. The examination was otherwise unremarkable.

On February 1, 2013, Plaintiff presented to Dr. Cosgrove with continued complaints of neck pain and tingling in the arms. On physical exam, under "musculoskeletal," Dr. Cosgrove wrote, "Abnormal. Limited ROM of neck." (AR 375). On March 29, 2013, Dr. Cosgrove's musculoskeletal exam again noted, "Abnormal. Impaired ROM neck flexion, extension and rotation." (AR 372).

7

On June 28, 2013, Plaintiff saw Dr. Cosgrove for her ongoing neck pain. He noted that the musculoskeletal exam was "abnormal," with no further elaboration. (AR 369).

In his September 27, 2013 examination notes, Dr. Cosgrove noted an abnormal musculoskeletal exam with "continued increase tone para cervical" and limited range of motion. (AR 365). Dr. Cosgrove referred Plaintiff to a pain management center. (AR 366).

On October 2, 2013, Plaintiff presented to Satish Desari, MD at St. Margaret Mercy South for a pain management consultation. Dr. Desari noted her complaint of neck pain radiating to the right upper extremity. On physical examination, Dr. Desari found limited range of motion to flexion extension as well as to side to side rotation. He found her tender from C3 to T7 in the midline over the paracervical muscles bilaterally. He found her upper extremity motor strength equal bilaterally. (AR 595).

On October 14, 2013, Plaintiff again treated with Dr. Desari. On physical examination, Dr. Desari noted that she had limited range of motion in the neck with tenderness from C3-T7 midline and again over the paracervical muscles. He noted that her strength is equal bilaterally. Dr. Desari changed her medications.

On November 11, 2013, Dr. Desari noted Plaintiff's chief complaint was neck pain radiating to both upper extremities. On physical examination, Dr. Desari noted that Plaintiff was "able to flex, extend and rotate reasonably well. Spurling test is negative. She has tenderness from about C4-T1 in the midline. The facets were not tender." (AR 598).

Plaintiff had a follow up visit with Dr. Bacevich on December 13, 2013. She requested refills of her two medications and reported numbness in both arms. On physical examination, Dr. Bacevich wrote "Abnormal. Decreased ROM in all planes" under the heading "neck." Under

"musculoskeletal," Dr. Bacevich noted normal gait and status but noted abnormal for inspection/palpation of joints, bones, and muscles, for range of motion, and for muscle strength/tone. For muscle strength/tone, Dr. Bacevich noted weak hand grasp in both arms but also commented that there was questionable effort related and that her deep tendon reflexes were within normal limits in her upper extremities. (AR 590).

On February 19, 2014, Plaintiff presented to Dr. Cosgrove with complaints of chronic neck pain and doing poorly. Dr. Cosgrove found that she generally appeared uncomfortable. (AR 586-87).

Because Plaintiff does not challenge the mental residual functional capacity finding or any aspect of the decision related to her mental health, the Court does not include a summary of her mental health history.

### B. Medical Opinions

On February 9, 2013, state agency physician Dr. Mark Ruiz opined that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds, could stand, walk, or sit for six hours in an eight-hour day, and had no limits on pushing and pulling. (AR 97); (AR 103). He opined that she should never climb ladders, ropes, or scaffolds and could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. The ALJ gave "some weight" to this opinion but noted that later evidence shows the need for some limitation in overhead reaching. (AR 28).

On September 27, 2013, Dr. Cosgrove completed a "Cervical Spine Residual Functional Capacity Questionnaire" on behalf of Plaintiff. In her brief, Plaintiff notes that this opinion provides that Plaintiff would have significant restrictions on her ability to sit, stand, and walk for long periods in a work situation, that she could only lift ten pounds on an occasional basis and would have limitation in rotating her neck in a work situation, and that she would miss more than four days per

9

month of work due to her impairments and treatment. (Pl. Br. 7). The ALJ gave this opinion "limited weight." (AR 28).

At the hearing, independent medical expert Robert Sklaroff, M.D. focused on Plaintiff's surgery and the residual pain thereafter. He opined that Plaintiff can stand, sit, or walk six hours in an eight-hour day. Dr. Sklaroff referred to the October 7, 2013 CT of the cervical spine which indicated mild narrowing of both neural foramina at C6/7. He assigned no limits in terms of squatting, pushing, pulling, bending, or reaching. He found she can lift at least 20 pounds occasionally and 10 pounds frequently. He gave mild restrictions for ramps, ladders, and stairs. The ALJ gave this opinion "limited weight." (AR 28).

## ANALYSIS

In this appeal, Plaintiff's only basis for reversal is that the ALJ improperly weighed the September 27, 2013 opinion of her treating physician, Dr. Cosgrove. In determining whether a claimant is disabled, the ALJ "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence . . . received." 20 C.F.R. § 404.1527(b). And, the ALJ evaluates every medical opinion received. 20 C.F.R. § 405.1527(c). This includes the opinions of nonexamining sources such as state agency medical and psychological consultants as well as outside medical experts consulted by the ALJ. *Id*. § 405.1527(e)(2).

An ALJ must give the opinion of a treating doctor controlling weight if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not inconsistent" with substantial evidence of record. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *see also Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). In weighing all opinion evidence, the ALJ considers several factors and "must explain in the decision the weight given" to

each opinion. 20 C.F.R. § 404.1527(e)(2)(ii), (iii); *Scrogham v. Colvin*, 765 F.3d 685, 697-98 (7th Cir. 2014); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th 2008). When a treating physician's opinion is not given controlling weight, the ALJ must nevertheless consider certain factors to determine how much weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability (such as medical signs and laboratory findings), and specialization. 20 C.F.R. § 404.1527(c)(2)-(5).

After summarizing several details from the questionnaire completed by Dr. Cosgrove, *see* (AR 27), the ALJ assigned the opinion "limited weight," finding that the assessment is not supported by physical examinations at the time of the opinion. (AR 28). The ALJ noted that Dr. Cosgrove assessed 50 percent reduction in range of motion in September 2013 while Dr. Dasari's examiantion notes show that Plaintiff was able to rotate and flex reasonably well. *Id*. The ALJ also commented that Dr. Cosgrove's "physical examinations simply state abnormal musculoskeletal without details of those abnormalities." *Id*. Finally, the ALJ noted that, on examination on December 13, 2013, Plaintiff reported numbness in both arms and on examination the doctor noted weak hand grasp in both arms but also noted questionable effort. *Id*.

Plaintiff makes two arguments regarding the ALJ's treatment of Dr. Cosgrove's opinion. Plaintiff argues that the ALJ erred in giving the opinion of Dr. Cosgrove "little weight" by improperly considering the facts and that, once Dr. Cosgrove's opinion was not given controlling weight, the ALJ erred by not weighing the checklist factors in § 404.1527(c)(2). The Court considers each argument in turn.

Plaintiff makes three specific arguments challenging the ALJ's decision not to give the opinion controlling weight. First, Plaintiff criticizes the ALJ for finding that Dr. Cosgrove "appeared

11

to rely heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to accept uncritically as true most, if not all, of what the claimant reported." (AR 30). However, the ALJ makes this comment in the context of weighing the opinion given by Dr. Cosgrove on Plaintiff's allegations of depression and anxiety, which the ALJ discussed separately after discussing Plaintiff's physical impairments. *See* (AR 28-30). Nowhere in her brief does Plaintiff argue that the ALJ erred in weighing Dr. Cosgrove's opinion on her mental impairments. Notably, Plaintiff's recitation of Dr. Cosgrove's opinion focused solely on the physical residual functional capacity findings regarding standing, sitting, walking, and lifting. *See* (Pl. Br. 7). There is no indication in the decision that the ALJ discounted Dr. Cosgrove's opinion on Plaintiff's physical impairments because they were based heavily on subjective reports by Plaintiff. This argument is not well taken.

Second, Plaintiff notes that the ALJ discounted Dr. Cosgrove's September 27, 2013 opinion on the basis that, three months later, Dr. Bacevich noted that Plaintiff had "questionable effort" on examinations finding a bilateral "weak hand grasp." (AR 28 (citing (AR 590))). It is not clear how this comparison detracts from the ALJ's assessment of Dr. Cosgrove's opinion. Dr. Bacevich opined that Plaintiff put forth questionable effort, which brings in to question Plaintiff's complaints and efforts on other exams.

Third, Plaintiff criticizes the ALJ for relying on Dr. Desari's November 11, 2013 examination findings that Plaintiff was able to flex, extend, and rotate reasonably well, when the ALJ ignored the October 2, 2013 and October 14, 2013 reports of Dr. Desari noting a restricted range of motion in the neck. Although Plaintiff is correct that the October 2 and 14 exams were closer in time to Dr. Cosgrove's opinion date, Dr. Desari's records also reveal that he was adjusting

12

Plaintiff's medications during that period and that he noted an improvement with the medications at the November 11, 2013 examination. The ALJ explicitly noted in his summary of Dr. Desari's treatment records that Dr. Desari noted good response to pain with the use of Nucynta. (AR 27).

In addition, the limitations Dr. Cosgrove proposed are not consistent with the medical evidence. Dr. Cosgrove opined that Plaintiff could sit for only twenty minutes or stand for only five minutes at a time and could sit for a total of only four hours a day and stand or walk for a total of less than two hours a day. This opinion essentially suggests that Plaintiff must lay down for two hours in an eight-hour day. Other than identifying diagnoses of migraine headaches and disc disease, Dr. Cosgrove pointed to no clinical or diagnostic techniques to substantiate the opinions he gave on the checkbox form. Plaintiff identifies no evidence to support such limitations. This lack of support in the record is consistent with the weight given to the opinion by the ALJ.

Moreover, the ALJ thoroughly reviewed the medical evidence of record, summarizing and reviewing the treatment and opinion evidence. Plaintiff does not object to the ALJ's treatment of any of those records, including the consultative examination by Dr. Smejkal in January 2013. The ALJ noted that Dr. Smejkal found that Plaintiff walked in with straight posture and appeared comfortable seated or supine, had spinous and paraspinal tenderness in the cervical region with restricted range of motion, and had decreased upper extremity strength of 4/5. The ALJ further noted that Dr. Smejkal found that Plaintiff has normal lower extremity strength as well as gait and ability to stoop, squat, heel to toe walk, and get on and off the exam table. The ALJ indicated that Dr. Smejkal found that Plaintiff was able to stand from sitting without any difficulty and that neurologically Plaintiff was alert and oriented with normal reflexes and fine finger manipulation. Although the ALJ did not explicitly discount Dr. Cosgrove's opinion based on this consultative examination, the ALJ

13

incorporated Dr. Smejkal's examination findings in his recitation of the medical history. As indicated by the ALJ, Dr. Cosgrove's examination notes following the January 2013 consultative examination with Dr. Smejkal through and after the date of his September 2013 opinion routinely note only "abnormal" with an occasional notation of "limited range of motion" with no further explanation or findings or any indication of worsening symptoms.

Substantial evidence supports the ALJ's decision not to give Dr. Cosgrove's September 2013 opinion controlling weight.

Plaintiff's second challenge to the ALJ's treatment of Dr. Cosgrove's opinion is that, once the ALJ did not give controlling weight to the opinion, the ALJ was required to explicitly consider the checklist of factors in § 404.1527(c)(2). In some cases, the Seventh Circuit Court of Appeals has held that the ALJ must explicitly address the checklist of factors in the opinion in order to allow the district court to review whether the ALJ in fact considered the factors. *See Scrogham*, 765 F.3d at 697-98; *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Bauer*, 532 F.3d at 608. However, in other cases, the Seventh Circuit Court of Appeals has held that a court will "allow that decision to stand so long as the ALJ 'minimally articulate[d]' his reasons—a very deferential standard that [the court has], in fact, deemed 'lax.'" *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (citing *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)); *see also Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

In this case, Plaintiff has offered no explanation of how any further explicit consideration of the factors would change the weight given to Dr. Cosgrove's opinion. Like in *Schreiber*, although the ALJ did not explicitly weigh each factor in the written decision, the decision overall demonstrates that the ALJ was aware of and considered the factors. The ALJ recognized that Dr.

14

Cosgrove was Plaintiff's treating physician. Dr. Cosgrove was not a specialist (although the ALJ incorrectly identified Dr. Cosgrove as an orthopedist). There do not appear to be any tests that support Plaintiff's claim of disability or Dr. Cosgrove's opinion and Plaintiff does not identify any. And, as discussed above, the ALJ discussed the supportability of Dr. Cosgrove's opinion by pointing to inconsistencies between the opinion and treatment records in evidence. The Court finds that the ALJ sufficiently accounted for the factors in § 404.1527 and Plaintiff has not argued how the outcome would be different if the ALJ had been more explicit in the decision. *See Elder*, 529 F.3d at 415-16.

The ALJ properly articulated his reasons for not giving controlling weight to the opinion of Dr. Cosgrove and weighed the opinion based on the regulatory factors. Therefore, reversal is not warranted.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the relief requested in Plaintiff's Opening Brief [DE 15]. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Defendant and against Plaintiff.

SO ORDERED this 15th day of November, 2016.

        s/ Paul R. Cherry
        MAGISTRATE JUDGE PAUL R. CHERRY
        UNITED STATES DISTRICT COURT